CHICAGO, R. I. & G. RY. CO. v. HENSLEY. (No. 8696.)

(Court of Civil Appeals of Texas. Ft. Worth. June 16, 1917.)

1. EVIDENCE ☞491 — OPINION ON MIXED QUESTION OF LAW AND FACT—TIME CONSUMED IN TRANSIT.

A witness' testimony, based on his own experience as to time usually consumed in shipping cattle between specified points; did not violate the rule making incompetent any opinion upon a mixed question of law and fact, although he testified that he had never shipped cattle to the · place in question, but based his opinion upon the time for shipment to an intermediate point and from such point to the place of consignment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2269.]

2. APPEAL AND ERROR ☞1051(1)—HARMLESS ERROR—ADMISSION OF OPINION EVIDENCE— OTHER SIMILAR EVIDENCE.

The admission of opinion evidence as to time usually consumed in shipment of live stock, held harmless in view of other evidence including a subsequent examination of that witness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166.]

3. EVIDENCE ☞493—OPINION—CONDITION OF CATTLE — EFFECT OF CARRIER'S DELAY IN SHIPMENT.

In an action for injuries to live stock shipment it was competent for an experienced witness to testify in answer to a hypothetical question as to the effect upon cattle of carrier's delays and rough handling shown by the testimony, and such effect in the way of shrinkage in weight and stale appearance affecting the selling price.

[Ed. Note.—For ˙other cases,˙ see Evidence, Cent. Dig. §§˙2275–2282.]

Appeal from District Court, Jack County; F. O. McKinsey, Judge.

Action by H. J. Hensley against the Chicago, Rock Island & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Lassiter & Harrison, of Ft. Worth, and Stark & Stark, of Jacksboro, for appellant. Sporer & McClure, of Jacksboro, for appellee.

CONNER, C. J. Appellee recovered a judgment for $671.23 as damages to a cattle shipment from Jack county, Tex., to Kansas City, Mo. The grounds of recovery as alleged were those that usually arise in shipments of like character and the total damages because of delays, rough handling, shrinkage in weight and stale appearance, were laid in the sum of $1,027.38. Little or nothing new

is presented in the record. The shipment consisted of ten cars—less than a trainload.

[1] The first assignment of error goes to the answer of the appellee while testifying as a witness relating to the subject of the usual time of making a run of the kind from Jacksboro to Kansas City, Mo. The bill of exception presenting the matter sets out the colloquies between counsel and the witness and the court and counsel at considerable length, all culminating, so far as we are able to tell, in the following question and answer:

"Q. (by counsel for appellee). State the number of hours ordinarily consumed in the transportation of cattle from Jacksboro to the Kansas City stockyards."

Appellant, by its counsel, objected to the question as "hearsay, irrelevant, incompetent, involving an opinion of the witness on a mixed question of law and fact which should be decided by the court and jury." The witness answered:

"As I told you at first, I never went with any shipment from here, but have run it 28 to 30 hours at Addington, and takes about 10 hours from here to Addington. That is all the way I can answer the question. Q. (by counsel for appellee). How many hours would that take? A. Take about 30 hours."

We think it apparent that the answer of the witness is not in violation of the rule announced in the Robert Case to the effect that it is incompetent for a witness to give an opinion upon a mixed question of law and fact. Appellee qualified as a shipper of cattle to the Kansas City and other markets for many years, and while he stated that he had never in person accompanied a shipment from Jacksboro, Tex., to Kansas City, Mo., he testified that he had personally attended shipments from Jacksboro to Addington, Kan., and other shipments from Addington to Kansas City, Mo.; that shipments from Jacksboro to Addington were usually made within about 10 hours, and from Addington to Kansas City in about 30 hours. The answer of the witness in character was but the statement of a fact arising out of his own experience, and as such we think was entirely competent.

[2] Moreover, when the answer of the witness is read in the light of a subsequent examination wherein he stated that the 30 hours from Addington and the 10 hours from Jacksboro to Addington did not "include time taken out for feed," which he stated usually took from 6 to 7 hours, and in the light of the testimony of several other witnesses, to the effect, that the usual shipment from Jacksboro to Kansas City, Mo., was made in 48 hours, it was certainly without prejudicial effect. To illustrate, the substance of the testimony of appellee as a whole is that the usual shipment from Jacksboro to Kansas City when cattle were fed en route, as were those involved in the present shipment, would take about 47 hours, and the witness Knox, after having stated that he had been shipping cattle to Kansas City stockyards from 20 to 25 years, testified that:

"The time consumed in an ordinary shipment of cattle from Jacksboro to Kansas City stockyards generally takes me about 48 hours, I think, as near as I can remember, 40 to 48 hours. That is where they have to unload the cattle (for feed)."

A. B. Warner, the vice president and general superintendent of the appellant company, and who was offered as a witness in its behalf, testified that he was acquainted with the "schedule time for the moving of live stock shipments from Jacksboro, Tex., to Kansas City, Mo., over the Rock Island Railway Company's lines," and after having given the time of arrivals and departures of the several intervening stations, further testified that:

"Moving on regular schedule trains, the time consumed in moving a shipment from Jacksboro, Tex., to Kansas City, Mo., would be 48 hours and 45 minutes, including 7 hours delay at Harrington, Kan., between trains Nos. 98 and 92, and allowing 1 hour from the C., R. I. & P. Junction to the Kansas City stockyards."

It thus appears that there is but little, if any, material difference in the testimony of appellee on the point under consideration, and that offered by other witnesses, including that of appellant's vice president and general superintendent, and to render yet more clear, if possible, the groundless character of the objections urged to appellee's testimony on the point under consideration, it may be further stated that it is undisputed in the testimony that appellee's cattle were placed in the pens of appellant company at Jacksboro, Tex., for shipment about 10 o'clock p. m. September 8, 1914; that they were loaded on the cars at about 12 o'clock that night; and that the cattle arrived in the freight yards of the C., R. I. & P. at Kansas City, Mo., at 4 p. m. September 11, 1914, and were placed in the stockyards at that point about 5:30 p. m., too late for that day's market, making a delay in all of more than 16 hours over the schedule running time, and a total delay until the next day's market of 23 hours. We, accordingly, overrule appellant's first assignment, and what we have said in disposing of this assignment likewise answers the fifth and others presenting substantially the same question.

[3] It was entirely competent, we think, for the witness Knox in answer to the hypothetical question presented to state the effect upon cattle of the delays shown in the testimony. By no process of reasoning that we are able to approve can it be said that the testimony was "hearsay, irrelevant, and only the opinion of the witness on a mixed question of law and fact," as urged in the objections to the answer. Nor is there any force in the further objection that the answer amounted to a "comparison of this shipment with others made by witness without the conditions being shown." The witness was evidently and clearly an expert, and his opinion as to the effect of the undisputed delays in the shipment under consideration was clearly admissible under authorities so famil-

iar that we need not cite them. Appellant's second assignment will, accordingly, be overruled, and upon like reasoning do we also overrule appellant's third assignment objecting to the opinion of appellee as to the effect of delays and rough handling in the way of shrinkage in weight, and the fourth assignment objecting to appellee's opinion of the effect of a stale appearance in transported cattle upon their selling price.

We find no prejudicial error in the proceedings below, and the judgment will, accordingly, be affirmed.